UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENEEN L. MONTGOMERY-SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-4737** |
| **LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, ET AL** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, the State of Louisiana, through the Department of Health and Hospitals (the "DHH") (Doc. #82) is **GRANTED** as to plaintiff's racial discrimination claim brought under Title VII, 42 U.S.C. §§2000e, et seq., and that claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to plaintiff's retaliation claim brought under Title VII.

## BACKGROUND

Plaintiff, Deneen Montgomery-Smith, an African American, began her employment with the State of Louisiana in 1989 in the Office of Family Support, a division of the Department of Social Services. In September 2002, she was promoted to the position of Adult Protective Services Specialist 3 with the DHH. Then, in March 2004, plaintiff was promoted to Adult Protective Services Supervisor.

In April 2007, plaintiff filed a discrimination lawsuit against the DHH in the Civil District Court, Parish of Orleans, State of Louisiana, which arose out of an Equal Employment Opportunity

Commission ("EEOC") charge dated June 2006.  On July 16, 2007, plaintiff obtained a default judgment against the DHH.[1]

On January 21, 2008, plaintiff filed another EEOC charge against the DHH for sex, race, and age discrimination, and a retaliation claim in relation to her prior EEOC charge and lawsuit against the DHH.  Specifically, she claimed that on April 5, 2007, she received a letter of reprimand; on May 7, 2007, she was placed on a one-year extended supervisory plan; her personal performance rating was not timely completed; on July 25, 2007, she was transferred to the Office of Public Health, Vital Records Program ("Vital Records Program"), and was stripped of supervisory responsibilities; and that three white males were hired as supervisors after her transfer.  On July 28, 2008, plaintiff received a Right to Sue letter from the EEOC.  On October 24, 2008, she filed this suit in the United States District Court for the Eastern District of Louisiana.

In her complaint and amended complaint, plaintiff alleges that the DHH discriminated against her due to her race and in retaliation for her prior EEOC charge and discrimination lawsuit by transferring her to the Vital Records Program on July 21, 2007 in violation of Title VII, 42 U.S.C. §§2000e, et seq..[2]  The DHH filed a motion for summary judgment seeking dismissal of plaintiff's Title VII racial discrimination and retaliation claims.

---

[1] The default judgment was obtained from the Civil District Court, Parish of Orleans, State of Louisiana, which held that plaintiff made a *prima facie* case of discrimination and awarded plaintiff $59,625 in compensatory damages and back pay.

[2] Plaintiff also alleged claims against the Louisiana Civil Service Commission, and claims against the DHH under state law, 42 U.S.C. § 1981, and for age discrimination, which the court dismissed. (Doc. #24). The court also held that any claims against the DHH related to actions taken before plaintiff's June 2006 EEOC charge were the subject of plaintiff's previous state court discrimination lawsuit against the DHH, and were prohibited by *res judicata*. Id.  Further, the court noted that plaintiff's complaints did not include a claim for sex discrimination. Id.

## ANALYSIS

**A.      Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56©.  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Claims Not Properly Before the Court**

In her January 21, 2008, EEOC charge plaintiff alleged that the DHH racially discriminated against her and retaliated against her in violation of Title VII by reprimanding her on April 5, 2007, placing her on a one-year extended supervisory plan on May 7, 2007; failing to timely complete her personal performance ratings; transferring her to the Vital Records Program, on July 25, 2007, which stripped her of supervisory responsibilities; and hiring three white males as supervisors after her transfer.

In her complaint and amended complaint, plaintiff alleged that the DHH racially discriminated and retaliated against her in violation of Title VII by transferring her on July 25, 2007, to the Vital Records Program. Neither plaintiff's complaint, nor her amended complaint contained any allegations regarding the other events mentioned in the EEOC charge. Thus, the only claims that are properly before the court are plaintiff's racial discrimination and retaliation claims brought under Title VII regarding her July 25, 2007, transfer to the Vital Records Program. Any other claims of racial discrimination or retaliation discussed in the DHH's motion for summary judgment and plaintiff's opposition thereto are not properly before the court, and need not be further addressed.

C.    **Title VII Limitations Period**

Pursuant to 42 U.S.C. § 2000e-5(e)(1), in a referral state[3] such as Louisiana, a Title VII charge "shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."

Plaintiff filed her EEOC charge on January 21, 2008, based on the July 25, 2007, transfer to the Vital Records Program. Thus, Plaintiff's EEOC charge was timely, because plaintiff filed it within 300 days of the occurrence of the alleged unlawful employment practice.

D.    **Race Discrimination and Retaliation Under Title VII**

Plaintiff claims that the DHH discriminated against her in violation of Title VII because of her race, and retaliated against her for her prior EEOC charge and discrimination lawsuit.

---

[3] A referral state is one in which the aggrieved person can initiate proceedings with a State or local agency with authority to grant or seek relief from the alleged unlawful employment practice or institute criminal proceedings with respect to it. See 42 U.S.C. § 2000e-5.

A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove her case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994).  Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002).  "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)." Id.  However, "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Id. (quoting Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 621-22 (1984)).

Plaintiff has not submitted any facts that are direct evidence of the DHH's alleged racial discrimination or retaliation.  Instead, she alleges that the DHH transferred her to the Vital Records Program a few days after a default judgment was entered in her previous discrimination case against the DHH.  Plaintiff argues that the negative evaluation and complaints about her performance were a pretext. Because this is a circumstantial evidence "pretext" case, the McDonnell Douglas test applies. See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

In McDonnell Douglas Corp., the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113, S.Ct. 2742, 2742 (1993).  Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000).  If the plaintiff does not establish a *prima facie* case, the defendant is entitled to summary judgment.

5

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the conduct. See Reeves, 120 S.Ct. at 2106. This burden is one of production, not persuasion and involves no credibility assessment. Id. If the defendant meets the burden, the presumption raised by the plaintiff's *prima facie* case disappears. Id.

Once the employer produces sufficient evidence to support a nondiscriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (internal quotation and citation omitted). The plaintiff must then demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

  **1. Discrimination**

    **a. Plaintiff's *Prima Facie* Case**

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated employee who was not a member of her protected class. McDonnell Douglas, 93 S. Ct. at 1824.

    **I. Protected Class**

As an African-American, plaintiff is a member of a protected class. See 42 U.S.C. §§2000e-2.

### ii.     Qualified for Her Position

Plaintiff has a bachelor's degree in sociology, and a master's degree in criminal justice. There is no dispute that she was qualified for her position as an Adult Protective Services Supervisor at the DHH.

### iii.    Adverse Employment Action

Plaintiff suffered an adverse employment action when she was transferred to the Vital Records Program, which stripped her of her supervisory role, and eliminated her ability to earn overtime. See Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999) (Title VII addresses only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating.").

### iv.    Treated Less Favorably than a Similarly Situated Employee Who Was Not a Member of Her Protected Class

In Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5 th Cir. 2009), the United States Court of Appeals for the Fifth Circuit explained that in Title VII discrimination cases, a plaintiff who proffers a fellow employee as a comparator must

> demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received

7

>from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

(internal citations omitted).

Plaintiff does not offer any examples of fellow employees who were treated differently under nearly identical circumstances. Therefore, plaintiff has not satisfied the fourth prong of the McDonnell Douglas inquiry, and has failed to establish a *prima facie* case of racial discrimination under Title VII. The DHH's motion for summary judgment is GRANTED as to plaintiff's racial discrimination claim bought under Title VII, and that claim is DISMISSED WITH PREJUDICE.

**2.    Retaliation**

**a.    Plaintiffs'** *Prima Facie* **Case**

To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). Just as in a discrimination case, a plaintiff who is unable to establish a *prima facie* case cannot survive a summary judgment challenge. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 429 (5th Cir. 2000).

**I.    Protected Activity**

An employee engages in a protected activity if she opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

8

Plaintiff filed an EEOC charge against the DHH in 2006, and a discrimination lawsuit in April 2007. Thus, she engaged in a protected activity.

### ii.     Adverse employment action

For an "adverse employment action" to be actionable under Title VII's retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

Plaintiff has satisfied the second prong for establishing a *prima facie* case for retaliation, in that she alleges that she was essentially demoted, lost her supervisory authority, and lost the opportunity to earn overtime pay, in retaliation for filing the prior discrimination charges against the DHH.

### iii.    Causal Link

To establish the causal link element of a *prima facie* case of a retaliation claim, the plaintiff need not meet the "but for" standard. Stroud v. BMC Sorftware, Inc., 2008 WL 2325639 (5th Cir. 6/6/2008). "Close timing between an employee's protected activity and an adverse action against h[er] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Cooper v. United Parcel Serv., Inc., 368 Fed. Appx. 469 (5th Cir. 2010) (quoting McCoy, 492 F.3d at 562). However, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Sumervell Cnty., Tx., 2011 WL 262357 (5th Cir. 7/1/2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001))

("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotations and citation omitted).

Plaintiff filed her prior discrimination lawsuit against the DHH in April 2007, and the DHH was served on April 25, 2007. At her deposition, Darlene Smith, Program Manager/State Registrar in Vital Records, testified that Roxanne Townsend, M.D. , DHH Deputy Secretary, emailed her in May 2007, advising that Townsend wanted to transfer plaintiff to the Vital Records Program. At her deposition, Townsend testified that the position in the Vital Records Program to which plaintiff was transferred was created for plaintiff effective July 2, 2007. Plaintiff was transferred to the Vital Records Program on July 25, 2007, a few days after a default judgment was entered against the DHH in her prior discrimination suit. The temporal proximity between plaintiff's prior discrimination suit against the DHH, and her reassignment establish the causal link necessary to demonstrate a *prima facie* case of retaliation under Title VII.

     **b.  The DHH's Non-Discriminatory Justification**

Plaintiff has established a *prima facie* case of retaliation. Thus, the DHH has the burden of production to articulate a legitimate, nondiscriminatory reason for plaintiff's reassignment. See Reeves, 120 S.Ct. at 2106.

The DHH contends that it had to move plaintiff to a non-supervisory position because plaintiff's subordinates repeatedly complained about her performance. Thus, the DHH has articulated a nondiscriminatory justification for plaintiff's transfer to the Vital Records Program.

### c. Pretext

Because the DHH produced a nondiscriminatory justification for plaintiff's reassignment, plaintiff's *prima facie* case disappears. Id. To survive summary judgment, plaintiff must demonstrate by a preponderance of the evidence that the DHH's stated reasons for her transfer were not its true reasons, but rather were pretext for retaliation. Id. Plaintiff must demonstrate that she would not have been reassigned "but for" her prior discrimination suit against the DHH. Septimus, 399 F.3d at 608.

In his deposition, Hugh Eley, Appointing Authority, who was involved in the decision to transfer plaintiff to the Vital Records Program, testified that he was not aware that the request to transfer plaintiff was made after plaintiff received favorable evaluations in February and June 2007. Also, in her deposition, Vanessa Wells, one of plaintiff's former subordinates, testified that she built a rapport with plaintiff, still speaks with her, and that plaintiff was an instructive and encouraging supervisor. Also, Elizabeth Phillips, another one of plaintiff's former subordinates, testified that she filed a grievance against plaintiff because another supervisor told her she should, and that plaintiff always followed the DHH's policies.

This evidence demonstrates that there are genuine issues of material fact regarding whether the DHH's stated reasons for plaintiff's reassignment were a pretext for retaliation. Therefore, the DHH is not entitled to summary judgment on plaintiff's Title VII retaliation claim regarding her reassignment to the Vital Records Program.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, the DHH (Doc. #82) is **GRANTED** as to plaintiff's racial discrimination claim brought under Title VII, and that claim is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** as to plaintiff's retaliation claim brought under Title VII.

New Orleans, Louisiana, this  18th  day of August, 2011.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**